**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-60039-CR-SINGHAL(s)(s)**

**UNITED STATES OF AMERICA**

**v.**

**CARLEEN NOREUS,**

**Defendant.**
**______________________________________/**

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States, by and through the undersigned Assistant United States Attorney, hereby files its response to the Sentencing Memorandum (ECF 149) filed by defendant Carleen Noreus. In support of its response, the United States avers as follows:

**ARGUMENT AND MEMORANDUM OF LAW**

*Defendant Should Not Be Awarded a Downward Variance or Departure.*

Defendant Carleen Noreus should not be awarded a downward variance or departure from the applicable sentencing guideline calculation. For the reasons set forth below, this Court should reject any request for a downward variance and impose a term of imprisonment within the applicable advisory guideline level.

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 330, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), courts review a defendant's sentence for reasonableness. See *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir.2005). After Booker, a district court, in determining a reasonable sentence, must correctly calculate the advisory guidelines range and then consider the factors set forth in 18 U.S.C. § 3553(a). *United States v. Talley*, 431 F.3d 784, 786 (11th Cir.2005); *Winnegar*, 422 F.3d at 1246. The factors set forth in § 3553(a) serve as a

guide in this review. *Id*. at 1246. Those factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the guideline range. *See* 18 U.S.C. § 3553(a).

Post Booker precedents emphasize that district courts must correctly calculate the advisory guideline range before granting a variance, *see United States v. Crawford*, 407 F.3d 1174, 1178 1179 (11th Cir. 2005), and that traditional guidelines departures are still an integral part of the sentencing process post Booker, *see United States v. Jordi*, 418 F.3d 1212, 1215 (11th Cir. 2005). Under this framework, defendant terms his request for a sentence less than the guideline sentence pursuant to § 3553(a) as a variance rather than a departure. *See United States v. Scott*, 426 F.3d 1324 (11th Cir. 2005) (distinguishing between departures from the guideline range and variances pursuant to the § 3553(a) factors). A variance is a sentence outside the applicable advisory guideline range that is imposed after such range, including any departures, has been correctly calculated. *See United States v. Irizarry*, 458 F.3d 1208, 1211 12 (11th Cir. 2006).

A district court may only depart or vary from the Sentencing Guidelines when there is an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). When making this determination, the court may "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Id.*

In view of these sentencing principles, a sentence within the applicable sentencing guidelines range, considering defendant's offense conduct, her personal history and circumstances, just punishment, and adequate deterrence, is reasonable. As the Booker Court noted, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into

account when sentencing." *Booker*, 125 S.Ct. at 767. A sentence within the Guidelines range would satisfy one of the explicit § 3553(a) factors. *See* 18 U.S.C. § 3553(a)(4).

Defendant relies on several grounds for a downward departure or variance including her personal circumstances, disparity in sentencing of similarly situated defendants, and early payment of forfeiture. None of these grounds is availing.

Beginning with Noreus's family circumstances, they are not so extraordinary as to remove her case from the heartland warranting a downward departure. Defendant invokes her care for her disabled grandson who has special needs. Noreus' family circumstances, however, are not so extraordinary as to remove her case from the heartland warranting a downward departure. "Family ... responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S. Sentencing Guidelines Manual § 5H1.6 (2000).

Considering the facts presented, defendant's circumstances are not exceptional, but are more akin to the common collateral damage of imprisonment that many defendants encounter. The collateral effects that Noreus' sentence has on her family do not distinguish his case from the many cases in which we have reversed downward departures. *See United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir.1992) (finding a woman with "two minor children to support, and a mother that lives with [her]" is not extraordinary); *United States v. Cacho*, 951 F.2d 308, 311 (11th Cir.1992) (having minor children to take care of is not extraordinary); *United States v. Allen*, 87 F.3d 1224, 1225 (11th Cir.1996) (finding that a defendant with the role of primary caretaker for his 70 year-old father with Alzheimer's and Parkinson's diseases is not extraordinary). There is nothing inherently extraordinary about caring for a child. Innocent family members, including children, commonly suffer because of a parent's incarceration. *Mogel*, 956 F.2d at 1565. Although Noreus' desire to minimize the sentence's adverse effects on her family is understandable, the Court should

not in turn reward defendant by departing downward. *See United States v. DeVegter*, 439 F.3d 1299 (11th Cir. 2006) (downward sentencing departure for family circumstances was not warranted, in federal wire fraud prosecution, by defendant's son's need for tutoring for dyslexia, or by mother-in-law's failing health; circumstances were not inherently extraordinary.)

Noreus further posits that she is entitled to a downward variance to avoid a disparity from the sentences imposed with respect to her co-conspirators, notably Stanton Witherspoon, and other similarly situated defendants. Noreus dismisses the fact that the individuals whose cases she cites all pleaded guilty, received a reduction for acceptance of responsibility, and cooperated with the government in this prosecution thus accounting for their lower sentences.

For example, Witherspoon received a reduction in sentence due to his extensive substantial cooperation with law enforcement authorities and payment of a large forfeiture judgment that Judge Smith considered at the time of her original sentencing, as well as having come forward at the inception of this investigation.

Although a sentencing court is required "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), defendants who cooperate with the government are not similarly situated to a defendant who provide no assistance to the government. *See United States v. Williams*, 526 F.3d 1312, 1323–24 (11th Cir. 2008). There is no unwarranted disparity even when the sentence the cooperating defendant receives is "substantially shorter." *Id*. at 1323; *see also, e.g.*, *United States v. Docampo*, 573 F.3d 1091, 1101–02 (11th Cir. 2009) ("Because [Docampo] did not provide any assistance to the government, there was no unwarranted disparity between his and [his cooperating co-conspirators'] sentences." ); *United States v. Price*, 644 F. App'x 875, 879 (11th Cir. 2016)

(unpublished) ("Defendants who cooperate with the government are not similarly situated to those defendants who do not.").

Here it is evident that Noreus' co-conspirator and other similarly situated defendants who received less severe sentences because of their guilty pleas and cooperation are not similarly situated. Because defendant occupied a managerial role in the offense, failed to accept responsibility for her criminal conduct until after two weeks of trial, and did not provide the government substantial assistance, there is no "unwarranted" disparity between defendant and her accomplices' sentences.

Defendant's third basis for downward variance or departure rests upon her promise of payment toward her forfeiture judgment. That defendant chooses to pay her debt to the United States Treasury that she rightfully owed due to her fraudulent conduct, does not amount to either early or extraordinary restitution. Nor is it so extraordinarily altruistic as to warrant a downward departure.

It is without cavil that voluntary payment of restitution or forfeiture is a mitigating circumstance that has been taken into consideration by the Sentencing Commission in formulating the guidelines. Application note 1(c) to USSG § 3E1.1 expressly recognizes that a downward adjustment for acceptance of responsibility may be applicable if the defendant voluntarily paid restitution prior to the adjudication of his or her guilt. However, the mere payment of restitution or mandated forfeitures cannot, in and of itself, be the basis for departing from the Guidelines. *See United States v. Hendrickson*, 22 F.3d 170 (7th Cir.1994); *United States v. Crook*, 9 F.3d 1422, 1426 (9th Cir.1993).

Rather, this Court is only authorized to depart from the guidelines based upon defendant's restitution efforts if, "in light of unusual circumstances, the guideline level attached to that factor

is inadequate." USSG § 5K2.0. The Sentencing Guidelines provide that district courts may depart upwards or downwards from the applicable Guidelines range if "the court finds, pursuant to 18 U.S.C. § 3553(b) (2) (A) (i), that there exists an aggravating or mitigating circumstance.... of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." USSG § 5K2.0 (policy statement).

In this specific context, the Eleventh Circuit in *United States v. Kim*, 364 F.3d 1235, 1240-42 (11th Cir. 2004) recognized that district courts are discouraged but not prohibited from departing downward on grounds of "extraordinary restitution." This is because, as pointed out above, the guidelines already consider "voluntary payment of restitution prior to adjudication of guilt" as relevant to the question of acceptance of responsibility. *Id*. at 1242, 1242 n. 8 (citing USSG § 3E1.1, comment (n. l(c)). Thus, payment of restitution only supports departures in the rare case where "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id*. (citing *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 2047 (1996)).

In determining what exceptional cases justify this discouraged departure, the Eleventh Circuit directed that district courts consider factors such as "the degree of voluntariness [of the payments], the efforts to which a defendant went to make restitution, the percentage of funds restored, the timing of the restitution, and whether the defendant's motive demonstrates sincere remorse and acceptance of responsibility." *Id*. at 1244.

Applying these principles to the case at bar, defendant's decision to belatedly pay a portion of her forfeiture (which to date has not occurred) is not voluntary nor is it borne out of remorse. Defendant agreed to pay a portion of her forfeiture resulting from her illicit proceeds owed to the U.S. government, and only after indictment, three years' delay from the inception of her

investigation by the government, two weeks of trial, and in the hope of receiving a reduced sentence. It is fair to say that had the government not demonstrated overwhelming proof of her guilt, Carleen Noreus would never have made good on her criminal forfeiture obligations. As proof of this proposition, when confronted at the airport upon her return from an overseas trip at the inception of this investigation approximately three years ago, Noreus emptied her bank accounts containing over $3 million earned from her fraudulent nursing school diploma scheme. This fact alone argues against his eligibility for a downward variance.

When considering departures in the similar category of extraordinary rehabilitation, courts have recognized that "[t]he reason that timing matters in rehabilitation is that a defendant who decides independently to turn his life around likely deserves higher marks than one who undertakes rehabilitation mainly (or at least partially) to gain advantage in imminent criminal proceedings." *United States v. Craven*, 239 F.3d 91, 99 (1st Cir. 2001). Further, "[s]ome degree of pre-sentence rehabilitation is usually to be expected from a penitent defendant.... Yet such predictable reactions, while laudable, fall well shy of what we believe is necessary to take cases out of the heartland." *United States v. Sklar*, 920 F.2d 107, 116–17 (1st Cir.1990). Applying these principles to defendant's request for departure, there is no evidence here that defendant's payments to satisfy her forfeiture obligations are motivated by her sincere desire to make amends to society rather than merely the more common motivation to reduce a sentence.

In addition to the timing and motivation, the amount of restitution is also a critical factor in determining whether a defendant's acceptance of responsibility is extraordinary. Defendant has not yet paid any forfeiture accruing from the instant offense, and is expected to pay only $4 million of a $9,522,100 criminal forfeiture judgment owed the government before sentencing. By contrast, in *Kim*, the defendants paid roughly 140 percent of the amount from which they personally

benefitted, a fact that figured prominently in the court's decision to award a variance. "Even though Appellees had agreed to pay restitution for the whole amount of the fraud in their plea agreement, the fact that they made and carried out their commitment to pay back money they never received simply demonstrates their extraordinary remorse. *Kim*, 364 F.3d at 1245.

Courts have generally not granted departures where the restitution was less than or equal to the amount stolen. *See, e.g.*, *United States v. Hairston*, 96 F.3d 102, 109 (4th Cir.1996) (holding that the payment of approximately half of the stolen funds after indictment did not take the case out of the 'heartland'); *United States v. Bean*, 18 F.3d 1367, 1369 (7th Cir.1994) (holding that full restitution of $75,000 fraudulently obtained from a bank did not warrant a departure in excess of that allowed by § 3E1.1). In contrast, courts are more willing to entertain the possibility of additional departures when the restitution exceeds the amount taken from the victims. *See, e.g., United States v. Lieberman*, 971 F.2d 989, 996 (3d Cir.1992) (affirming downward departure where defendant agreed "to pay about $34,000 more than he thought was owed and to which he pled guilty"); *United States v. Garlich*, 951 F.2d 161, 162–63 (8th Cir.1991) (remanding to the district court to consider additional departure where the defendant paid $1.4 million in restitution and the court estimated the loss to be only $253,000).

Thus, defendant's payment of his outstanding IRS tax obligation does not pose an exceptional case. As can be seen, defendant Tripuraneni's payment of restitution came only after his tax fraud scheme had come to light and a criminal prosecution instituted. The timing of defendant's payment—specifically, his failure to pay restitution before criminal indictment, and only pursuant to a negotiated plea agreement—cuts against the voluntariness of his act and militates against granting a downward departure.

Not that defendant's promise to pay a portion of her forfeiture should be discounted. Her decision to pay off some of her forfeiture obligation upon being discovered, warrants consideration in the sentencing calculus. Defendants who engage in such behavior should be granted some level of leniency. Defendant was granted just that in the form of his three level downward adjustment under § 3E1.1. An extraordinary acceptance of responsibility, however, requires some action that goes beyond the behavior envisioned by the § 3E1.1 adjustment, moving the case outside the "heartland" of the guidelines. Again, such is not the case here.

Unlike the defendants in *Kim*, here Noreus' promise to make payments toward her forfeiture debt are neither early nor extraordinary restitution and do not justify a variance or a departure. *See United States v. Grasser*, 312 F.3d 336 (7th Cir. 2002) (defendant's voluntary payment of $37,000 restitution towards $87,991 defendant had stolen from bank where she worked prior to defendant's sentencing for bank theft and bank fraud, while entitling defendant to two-level reduction of offense level for acceptance of responsibility, was not so exceptional as to warrant departure from Sentencing Guidelines); *United States v. Flowers*, 55 F.3d 218 (6th Cir.1995) (no basis for downward departure in sentencing defendants convicted of bank fraud by check kiting based on defendants' voluntary restitution; although restitution was commendable, it did not change fact that crime had been perpetrated, banks had indeed suffered loss, and judicial system should not unfairly reward financially able defendants who voluntarily make restitution after they are caught); *United States v. O'Malley*, 364 F.3d 974, 981-82 (8th Cir. 2004) (pre-Booker; downward departure from the Sentencing Guidelines for defendant convicted of conspiracy to commit bank fraud, mail fraud, and wire fraud was not warranted based upon extraordinary restitution effort; although defendant tendered a check for the full amount of the restitution, allowing a departure based on a defendant's economic resources would be contrary to

the intent of the Guidelines; voluntary payment of restitution was mitigating circumstance taken into consideration by the acceptance-of-responsibility Guideline).

Taken alone and together, defendant's circumstances do not qualify as an "extraordinary case" which would warrant deviation from the advisory guideline. Rather, Noreus' case is ordinary and is within the "heartland," *see Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (noting that a departure from the Sentencing Guidelines is only appropriate if the case is outside the "heartland" of typical cases embodied by the guideline), of typical cases covered by the applicable guideline. *See, e.g., United States v. Panfil*, 338 F.3d 1299 (11th Cir.2003); *United States v. Miranda*, 348 F.3d 1322 (11th Cir. 2003).

To the contrary, defendant's stance seeking a downward variance consciously overlooks the real casualty that resulted from her actions, that is, the grave risk of harm she brought to public health nationwide. Thousands of applicants who obtained fraudulent LPN and RN degrees issued by Noreus obtained certification from state boards of nursing across the United States. These applicants who were awarded licensure by unwitting state boards in fact failed to obtain the requisite training and clinical experience to satisfy the minimum standards to safely practice as nurses.

It should be without cavil that defendant's conduct contributed greatly to a significant and real risk of patient harm, particularly in the case of Tahira Bastien whose maltreatment resulted in a patient's death. In this case, it is incumbent upon the Court to send a strong, clear message to the public that such a violation of the collective trust cannot and will not be tolerated. Considering the extenuating nature of defendant's corrupt actions, a reduced sentence, as advocated by defense counsel, would absolve defendant of her egregious conduct, and provide little deterrent to like-minded offenders. The need for the sentence imposed to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment cries out for a sentence commensurate with that advised by the Sentencing Guidelines. These factors are unquestionably legitimate and serve as a reasonable basis upon which to not vary downward from the advisory guideline range. Clearly Noreus' callous actions in issuing bogus nursing school degrees to unqualified candidates borne out of greed merit severe punishment.

In sum, the record reveals nothing to indicate that the range of sentence prescribed under the Sentencing Guidelines is unreasonable considering the § 3553(a) factors, and defendant's request for a below guidelines sentence should be rejected.

## CONCLUSION

WHEREFORE, based on the foregoing, the United States respectfully requests that the Court deny the request for a downward variance filed by defendant Carleen Noreus in the instant case.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: /s/ Christopher J. Clark
CHRISTOPHER J. CLARK
Assistant United States Attorney
Florida Bar No. 0588040
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9167
christopher.clark@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Christopher J. Clark
CHRISTOPHER J. CLARK
ASST. UNITED STATES ATTORNEY